```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION


SHAWN K. WAITE,                       :
                                      :
     Plaintiff,                       :
                                      :
vs.                                   :
                                      :    CIVIL ACTION 15-0196-M
CAROLYN W. COLVIN,                    :
Social Security Commissioner,         :
                                      :
     Defendant.                       :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 19). Oral argument was waived in this action (Doc. 20). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Waite was thirty-four years old, had completed a tenth-grade education (Tr. 44), and had previous work experience as a car mechanic, electrician, and carpenter (Tr. 47-48).  Plaintiff alleges disability due to degenerative disc disease (Doc. 12 Fact Sheet).

Plaintiff protectively applied for disability benefits and SSI on April 12, 2012 and April 18, 2012, respectively (*see* Tr. 22, 131-42).  An Administrative Law Judge (ALJ) denied benefits, determining that although he could not perform any of his past relevant work, Waite was capable of doing a full range of sedentary work (Tr. 22-31).  Plaintiff requested review of the hearing decision (Tr. 14-15), but the Appeals Council denied it (Tr. 4-9).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Waite alleges

2

that: (1) The ALJ improperly found his testimony non credible; (2) the ALJ did not properly develop the record; (3) the ALJ improperly determined that he could perform a full range of sedentary work; and (4) the Appeals Council did not properly consider newly-submitted evidence (Doc. 12). Defendant has responded to—and denies—these claims (Doc. 15). The relevant evidence of record follows.

On August 18, 2011, Dr. Charles Todd Stokley, a family practitioner, examined Waite for low back pain; there was trace blood in his urine analysis (Tr. 245). On November 15, Plaintiff was experiencing pain in his right posterior back and flank area; Stokley prescribed Lorcet[1] and ordered CT examinations that demonstrated non-obstructive calculi in the left kidney and prostate stones (Tr. 219-20, 244).

On December 9, Dr. Joe M. Schultz, with Urology & Oncology Specialists, examined Waite for blood in his urine; normal gait and station were noted (Tr. 216-18). The diagnosis was chronic prostatitis for which he was given antibiotics. On January 9, 2012, Plaintiff complained of severe, daily, increasing pain in the penis, scrotum, and testicles that he rated at seven on a ten-point scale; Dr. Donald D. Kidd, diagnosed dysuria and

---

[1] *Lorcet* is a narcotic used to relieve moderate to severe pain. *See* http://www.webmd.com/drugs/2/drug-15828/lorcet-10-650-oral/details

3

prescribed Celebrex[2] (Tr. 213-14).

On January 17, 2012, Dr. Stokley saw Waite again for back pain and noted tenderness over his lower coccyx and in the base of his scrotum (Tr. 243). He ordered a CT of the sacrum and coccyx that showed normal curvature and anatomic appearance with no evidence of fracture; a destructive lesion could not be ruled out, though, because of radiographic over-penetration (Tr. 247).

A CT of the pelvis on January 20 revealed spondylolysis with spondylolisthesis at L5-S1 with a disc bulge and no clear demonstration of nerve impingement; further notation indicated prostatomegaly with stones (Tr. 235). On February 9, Dr. James Antinnes, Orthopaedic Surgeon, examined Waite for low back pain, radiating into the left leg, over the prior six weeks; he assessed chronic lumbago and prescribed Lortab[3] (Tr. 225-27, 269). On February 16, an MRI of the lumbar spine showed Grade I spondylolisthesis of L5 on S1 due to chronic bilateral spondylolysis with relatively mild foraminal stenosis worse on the right; there was also mild disc bulging with endplate spur effacing the thecal sac without cord deformity (Tr. 229). An MRI of the cervical spine demonstrated mild degenerative change,

---

[2]**Error! Main Document Only.**Celebrex is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults. *Physician's Desk Reference* 2585-89 (58th ed. 2004).

[3]**Error! Main Document Only.**Lortab is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

4

but no disc herniation, canal stenosis, or neural displacement (Tr. 228). On March 8, 2012, Plaintiff received a lumbar epidural steroid injection (Tr. 233-34). On March 26, Dr. Antinnes noted the MRI results and the injection and prescribed a Medrol[4] Dosepak as well as another injection that was administered on April 5 (Tr. 222-24, 231-32).

On April 20, Dr. Stokley examined Waite for a painful rash on the thoracic spine, diagnosed as shingles (Tr. 242).

In a form completed for the Social Security Administration on April 30, Waite stated the following:

> I have severe pain, and numbness in legs mainly in left side. When I wake up in the morning it takes a while to get proper movement of legs. Throughout the day I change my positions from sit[t]ing, lying, or walking whatever I need to do to minimize the pain. I use warms baths and heating pad to get bet[t]er rest at bedtime.

(Tr. 166, 173). Plaintiff also stated that he could not lift, bend, or stand for long periods of time (Tr. 169); he did not lift anything heavier than a plate (Tr. 171).

On May 3, Dr. Antinnes saw Plaintiff for continued pain and talked with him about surgery (Tr. 251-54). On July 5, the Doctor performed an L5 Gill laminectomy, a partial L4

---

[4]A *Medrol Dosepak* (methylprednisolone) is a steroid that prevents the release of substances in the body that cause inflammation. *See* http://www.drugs.com/mtm/medrol-dosepak.html

laminectomy, a segmental instrumentation, posterior spinal fusion, and transforaminal lumbar interbody fusion at L5-S1 (Tr. 259-60). Waite tolerated the procedure well with no intraoperative complications noted. On August 6, 2012, Dr. Antinnes noted that Plaintiff reported that he was doing fine with no leg pain; there was still back soreness, but it was improving daily (Tr. 281-85).

On September 18, Dr. Hurley W. Knott, a medical non-examiner who reviewed the record in existence as of that time, completed a physical residual functional capacity evaluation (hereinafter *RFC*) indicating that Waite was capable of lifting and carrying ten pounds frequently and twenty pounds occasionally; he could stand/walk and sit each for six hours during an eight-hour day (Tr. 263-68). Waite was unlimited in his ability to use hand and foot controls; he could frequently climb ramps or stairs, balance, kneel, crouch, and crawl, occasionally stoop, but could never climb a ladder, rope, or scaffolds. Plaintiff had no limitations seeing, hearing, or speaking, or in using his hands for manipulation. Waite should avoid concentrated exposure to extreme cold or vibration and all exposure to machinery or heights.

On October 8, Waite reported to Dr. Antinnes that he had been doing well until two weeks earlier when he started experiencing left hip pain, causing him to stop walking; x-rays

6

demonstrated no hardware malfunction (Tr. 282-83). The Surgeon thought a nerve had been irritated and prescribed a steroid pack and Toradol,[5] to be followed with prescriptions for Mobic[6] and Zanaflax.[7]

Waite underwent thirteen physical therapy sessions from November 8 through December 19, 2012, consisting of moist heat, ultrasound, and massage (Tr. 270-80). At the onset, Plaintiff reported his pain as ranging from six-to-ten on a ten-point scale; though pain improved throughout the course, it was not alleviated.

On January 8, 2013, Dr. Antinnes noted that Waite had "a positive FABER[][8] and femoral thrust even on the right side. This elicited left-sided [Sacroiliac] joint pain . . . even more prevalent when [the Doctor] did a FABER[]on the left" (Tr. 285). These tests, in addition to a drop leg test, "reproduced the symptoms that [Plaintiff had] on a most regular basis" (*id.*). Antinnes noted some radicular complaints in the left leg, though

---

[5]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[6]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[7]**Error! Main Document Only.***Zanaflax* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." *Physician's Desk Reference* 3204 (52nd ed. 1998).

[8]*FABER* is an acronym for *f*lexion, *ab*duction, *e*xternal *r*otation, and extension of the hip. It is a clinical test used to identify the source of pain (ilipsoas, groin or inguinal, or sacroiliac joint. *See* http://medical-dictionary.thefreedictionary.com/FABER+test

not as severe as in the joint; an injection was given in the joint on the left.

At the evidentiary hearing, Plaintiff, acting *pro se*, testified that he selected his disability onset date of January 13, 2012 because that was the date of the last work check he received (Tr. 39, 47).  Waite drove once a week to get things from the convenience store; he could dress and groom himself, but did no housecleaning (Tr. 49).  Plaintiff did no grocery shopping, cooking, laundry, or yard work (Tr. 50).  Waite's problem was his back pain, still the same as it was, eight weeks after surgery (Tr. 50).  This concludes the Court's summary of the evidence.

In bringing this action, Waite first claims that the ALJ improperly found his testimony of pain and limitation was not credible (Doc. 12, pp. 14-16).  The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held

that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2015).

The ALJ held that Waite's impairments could cause symptoms, but his "statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely credible" (Tr. 29).  The ALJ went on to find that "the medical record [was] consistent with the conclusion that the claimant's

9

conditions only limited him regarding his ability to stand and walk, although the record supports the conclusion that he retained a significant portion of his ability to walk" (Tr. 29). The ALJ noted Waite's surgery and that he had reported to his Surgeon that he was doing better—although there were lapses in the recovery—afterwards; he further noted Dr. Antinnes's finding that the hardware was in position and that his expectation that Waite's nerve irritation would calm down (Tr. 29; *cf.* Tr. 283).

The Court finds substantial support for the ALJ's conclusion. First, the medical records do not support the severe restriction of activities claimed by Waite; no doctor of record recorded the limitations suggested by Plaintiff. While the record indicates that Waite was not pain-free, it does not provide the necessary support for this Court to conclude that the ALJ's finding is in error.

Plaintiff next claims that the ALJ did not properly develop the record. More specifically, Waite asserts that the ALJ should have ordered a consultative orthopaedic examiner (Doc. 12, pp. 16-17). The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an

informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

The Court notes that Dr. Antinnes, an orthopaedic surgeon, provided the evidence most relevant to Waite's claim of disability. Plaintiff's dissatisfaction with his own doctor's records does not establish the need for the ALJ to have sought the opinion of another physician.

In another but different argument concerning the record, Waite seems to hold the ALJ responsible for not seeking out medical records of another examining doctor, Dr. Kim (Doc. 12, pp. 16-17). The record demonstrates that two of Kim's exams took place after the evidentiary hearing and before the ALJ's determination was entered (Tr. 299-304; *cf.* Tr. 19) though they were not submitted for consideration until after the ALJ had rendered his decision (Tr. 298). The Court notes that social security regulations state that a claimant is responsible for providing evidence from which the ALJ can make a determination. 20 C.F.R. § 404.1545(a)(3). Plaintiff's claim that the ALJ did not fully and fairly develop the record is without merit.

Waite next claims that the ALJ improperly determined that he could perform a full range of sedentary work. The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2015). The Court further notes

11

that

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (2015).

In bringing this claim, Waite asserts that the ALJ improperly relied on the Grid in reaching his decision because of his pain and inability to sit for prolonged periods. (Doc. 12, pp. 7-8). The Eleventh Circuit Court of Appeals has held that the "grids should not be applied when the variables used did not take into account the claimant's particular limitations." *McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988) (*citing Gibson v. Heckler*, 762 F.2d 1516, 1521 (11th Cir. 1985)). In *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996), the Court stated that "[t]he ALJ should not rely exclusively on the grids when the claimant has a nonexertional impairment that significantly limits his basic work skills or the claimant cannot perform a full range of employment at the appropriate level of exertion." Rather, the grid should be used as a "framework to evaluate vocational factors" along with other

"independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy." *Wolfe*, 86 F.3d at 1077.

The Court finds that although Waite experiences pain, it is linked specifically to his degenerative disk disease and has been thoroughly and properly considered by the ALJ, as found previously by the Court. Furthermore, Plaintiff points to no objective medical evidence to support his assertion that he cannot sit for prolonged periods.

Waite also takes issue with the ALJ's rejection of Dr. Knotts's conclusions, the non-examining medical reviewer, in finding him never able to climb ladders, ropes, or scaffolding and only occasionally able to stoop (Doc. 12, p. 10). The Government correctly notes, however, that Social Security Ruling 96-9p holds that those activities "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." Social Security Ruling 96-9p, 1996 WL 371485, *7. The same thing is true for an ability to stoop only occasionally. Social Security Ruling 96-9p, 1996 WL 371485, *7. Plaintiff further points to Knotts's restrictions on "concentrated exposure to extreme heat or vibration, and [for Plaintiff to] avoid all exposure to hazards, such as machinery and heights" (Doc. 12, p. 10); however, the Court notes that "a

13

need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." Social Security Ruling 96-9p, 1996 WL 371485, *9.

The Court finds no error in the ALJ's finding that Plaintiff can perform a full range of sedentary work.

Waite's final claim is that the Appeals Council did not properly consider newly-submitted evidence (Doc. 12, pp. 18-20). Plaintiff specifically references records submitted by Dr. Joe Kim (*see* Tr. 11-12, 299-306).

The Appeals Council considers additional evidence submitted by a claimant if it is new, material, and chronologically relevant. 20 C.F.R. § 404.970(b). The Appeals council must then decide if the new information renders the ALJ's "action, findings, or conclusion [] contrary to the weight of the evidence currently of record." *Id.* The Court further notes that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.2d at 1262. The newly-presented evidence was as follows.

On June 19, 2013, Dr. Kim reported that Plaintiff's left hip and lower extremity pain was five of ten, though it sometimes went to eight (Tr. 299-302). On examination, the Doctor noted that Waite's gait was non-antalgic, that he could forward flex at the lumbar spine to 45 degrees and extend to 15

14

degrees.  There was moderate tenderness with maneuvering and exquisite tenderness over the left sacroiliac joint.  There were no focal motor deficits in either upper or lower extremities, proximally or distally.  There was "diminished sensation to pinprick over the right L5 distribution and mildly diminished sensation to pinprick over the right C6 and C7 distribution" (Tr. 301).  The Doctor's impression was as follows:  (1) lumbar radiculitis, left-sided L5 and S1 levels; (2) spinal stenosis, lumbar with symptomatic neurogenic claudication; (3) post laminectomy syndrome, lumbar; (4) chronic, refractory low back pain of multifactorial etiology; (5) left-sided sacroiliitis; and (6) medical comorbidities (history of kidney stones and depression) (Tr. 302).  Kim prescribed Lortab.  On July 17, 2013, Plaintiff again reported his pain as five on a ten and that he was using his medications without side effects (Tr. 303-4).  There was decreased tenderness on examination.  The Doctor's impression was the same; Plaintiff was to return in three months.  On September 4, 2013, six weeks after the ALJ's decision was entered, Kim examined Waite who complained of low back pain, radiating into his left hip, at a level six; he also had right-sided headaches as well as weakness in the left hand (Tr. 305-06).  The Doctor noted 4/5 strength to the left elbow extension and some tenderness along his right occiput; he had radicular pain over the posterior aspect of both legs.

15

Plaintiff was to return in four months.

Also on September 4, 2013, Dr. Kim completed a physical capacities evaluation in which he indicated that Waite could sit two and stand or walk one hour at a time and sit four and stand or walk two hours during an eight-hour day (Tr. 11).  Plaintiff was capable of lifting twenty pounds frequently and twenty-five pounds occasionally and could carry five pounds frequently and ten pounds occasionally.  He could use both hands for simple grasping, pushing and pulling of arm controls and fine manipulation; Kim did not state whether or not Plaintiff could use leg controls.  The Doctor indicated that Waite could bend and reach occasionally but could never squat, crawl, or climb; he would have mild restrictions in working at unprotected heights, being around moving machinery, and driving automotive equipment and could never be exposed to marked changes in temperature and dust, fumes, or gas.  Kim also completed a pain form indicating that Plaintiff frequently suffered pain that was intractable and virtually incapacitating; medications had no significant effect on his ability to work (Tr. 12).

The Appeals Council reviewed this newly-submitted evidence and found that it provided no basis for changing the ALJ's decision (Tr. 5).  The Council further noted that the physical capacities evaluation and pain form from September 4, 2013 concerned Waite's condition at that time and did not concern his

16

condition as of the time of the ALJ's decision, July 22, 2013.

The Court finds no error in the Appeals Council's decision. Dr. Kim's first two examinations pre-dated the ALJ's decision, but there was nothing there suggesting that Waite's condition was any worse than had been previously reported; by his own reports, Plaintiff's pain had diminished. The Doctor noted no limitations or restrictions that would have been of benefit to the ALJ had he had the opportunity to see those records.

As for the examination, physical capacity evaluation, and pain form of September 4, the Appeals Council correctly found that those records pertained to a date beyond the period for which Waite's disability was being considered. Kim did not indicate that his opinions of Plaintiff's limitations and pain related back to the period of time that the ALJ was considering. As such, the Court finds that the Appeals Council was not in error in rejecting it.

Waite has raised four different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by

17

separate Order.

DONE this 30th day of December, 2015.


                                        s/BERT W. MILLING, JR.
                                        UNITED STATES MAGISTRATE JUDGE